IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AUTUMN BURTON, MORRIS E. McMILLIAN, MIKE BURKE, and AMANDA SHEPHERD, individually and in their respective capacity for all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHRYSLER GROUP LLC, <br><br> Defendant. | C.A. No. 12-5-LPS |

## MEMORANDUM ORDER

Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint. (D.I. 63) The Court heard argument on the motion on August 20, 2014. (*See* Transcript ("Tr.")) For the reasons discussed below, the Court will grant the motion.

### BACKGROUND

This case is a putative class action against Defendant Chrysler Group, LLC ("Chrysler Group" or "Defendant") alleging negligence and breach of warranty. Plaintiffs own model 2006-2008 cars manufactured and built by Old Carco LLC, formerly known as Chrysler LLC and Chrysler Motors LLC (collectively, "Chrysler Motors").[1] *See In re Old Carco LLC*, 492 B.R. 392, 394 (Bankr. S.D.N.Y. 2013).[2] Plaintiffs' claims pertain to a "fuel spit-back problem," a

---

[1] Further background relating to the bankruptcy is set forth in *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009).

[2] The Court takes judicial notice of the proceedings of the Bankruptcy Court. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988).

defect in the vehicles causing fuel to spill out of the filler tube during refueling. (*See* D.I. 62 ¶¶ 1-2) In 2002 and 2005, Chrysler Motors issued safety recalls for certain affected model year vehicles to address this problem. (*Id.* ¶¶ 3-4) In April 2009, Chrysler Motors filed for bankruptcy in the Bankruptcy Court for the Southern District of New York. *See In re Old Carco LLC*, 492 B.R. at 394. Then, in June of that year, Chrysler Group purchased Chrysler Motors' assets free of certain liabilities, pursuant to a Sale Order entered by the Bankruptcy Court. *Id.* at 396.

In 2011, Plaintiffs filed their complaint against this new owner of Chrysler Motors' assets – Defendant Chrysler Group – under a variety of legal theories; they filed their suit in Delaware state court. (D.I. 1 ¶ 1) In January 2012, Defendant removed the action to this Court. (D.I. 1) Defendant later filed a motion to dismiss, arguing that the Sale Order entered in the bankruptcy proceedings involving Chrysler Group barred Plaintiffs' claims; the economic loss doctrine barred Plaintiffs' negligence claims; and the Court should abstain from exercising its jurisdiction under the doctrine of primary jurisdiction. (D.I. 4; D.I. 5 at 4-5, 8) After hearing oral argument in August 2012, the Court transferred the action to the Southern District of New York, which had presided over the bankruptcy and had entered the Sale Order. (D.I. 58; D.I. 60) The Court's expectation was that the New York Bankruptcy Court would determine the effect of the Sale Order on Plaintiffs' claims and thereafter, if necessary, the case would return to this Court.

In announcing its ruling from the bench, the Court added:

> [I]f the case returns here, the Plaintiff will need to file a third
> amended complaint which accounts for whatever the New York
> court rules, and . . . [such claims,] if any, will be limited to actions
> that Defendant took in 2011 and 2012 . . . . Additionally, in the
> Court's view, and the Court holds, the economic loss doctrine

2

> applies here and the *de minimis* loss of the value of gas that is
> spilled, which is concededly *de minimis*, does not get around the
> application of that doctrine.

(D.I. 60 at 70-71) After the case was transferred, the New York Bankruptcy Court dismissed several of Plaintiffs' claims based on the Sale Order, but also determined that the Sale Order did not bar claims related to repair or replacement warranties issued by Chrysler Group in 2011 and 2012 (after the Sale Order); nor did it bar any "Lemon Law" claims arising under non-bankruptcy law. *See In re Old Carco LLC*, 492 B.R. at 395, 407.

On October 18, 2013, Plaintiffs filed in this Court their Third Amended Complaint (the "Complaint") against Chrysler Group, seeking compensation and remedial repairs for damages allegedly caused by Chrysler Group in relation to a Technical Service Bulletin ("TSB") and several warranties Defendant had issued, providing coverage for any repair or replacement of parts necessitated by the fuel spit-back problem for certain models (the "Extended Lifetime Warranties"). (D.I. 62 ¶¶ 1, 11-14) Specifically, Count I of Plaintiffs' Complaint alleges Chrysler Group acted negligently in connection with the issuance of the TSB and the Extended Lifetime Warranties (*id.* ¶¶ 32-41), and Count II alleges a breach of the Extended Lifetime Warranties (*id.* ¶¶ 42-44). In its motion to dismiss, Chrysler Group contends that: (1) the Court lacks subject matter jurisdiction; (2) Plaintiffs have failed to plead a cause of action for negligence and breach of warranty; and (3) Plaintiffs' claim for relief is preempted by federal law. (D.I. 64)

## LEGAL STANDARDS

I. **Rule 12(b)(1)**

Motions brought under Rule 12(b)(1) may present either facial or factual challenges to a

court's subject matter jurisdiction. *See Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to those allegations. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the Court's subject matter jurisdiction is challenged, the plaintiff bears the burden of proving jurisdiction exists. *See Mortensen*, 549 F.2d at 891.

## II. Rule 12(b)(6)

When presented with a motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6), courts conduct a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, courts separate the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. This step requires courts to draw all reasonable inferences in favor of the non-moving party. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000). However, courts are not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Second, courts determine "whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a context-specific determination, requiring the court "to draw on its judicial experience and common sense." *Id.* at 679. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Courts may consider exhibits attached to the complaint, matters of public record, and "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## DISCUSSION[3]

### I. Subject Matter Jurisdiction

Chrysler Group argues that Plaintiffs' Complaint should be dismissed because there is no justiciable case or controversy. (D.I. 64 at 8) Federal courts may only consider ongoing cases or controversies. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Id.*; *see also United States v. Kissinger*, 309 F.3d 179, 180 (3d Cir. 2002).

Chrysler Group argues that it has already provided Plaintiffs with the very relief Plaintiffs

---

[3]The parties are in agreement that, for the purposes of resolving the pending motion, the Court may apply Delaware law. (*See* D.I. 66 at 14; D.I. 69 at 5)

5

seek in their Complaint, thus rendering the case moot. (D.I. 64 at 8-9) Chrysler Group premises this contention on the uncontested fact that it has "already agreed to 'provide for the repair and replacement of parts necessitated by the fuel spit-back problem' in [Plaintiffs'] vehicles." (D.I. 64 at 8) (quoting D.I. 62 ¶ 14) Therefore, according to Defendant, the Court cannot provide Plaintiffs with any materially more favorable relief beyond that which Chrysler Group has already provided Plaintiffs. (D.I. 64 at 9) Hence, Defendant continues, there is no ongoing case or controversy, the Court lacks subject matter jurisdiction, and the case must be dismissed.

The Court does not agree. By their Complaint, Plaintiffs seek more in the way of relief than Chrysler Group has given them, and the Court could (if Plaintiffs prevail on the merits) grant materially more favorable relief than Plaintiffs have already received. For example, Plaintiffs request a mandatory injunction compelling Chrysler Group "to repair *all* vehicles that are subject to this cause of action" and provide "reasonable notification" of the defect to all owners of the affected vehicles. (D.I. 62 at 13) (emphasis added) By contrast, what Defendant has voluntarily agreed to do is to repair all vehicles that are currently experiencing the defect; Defendant has not agreed that it will today repair all vehicles (of the specified models and model years) even if they are not today experiencing the fuel spit-back problem. Likewise, while Chrysler Group has taken reasonable steps to notify all current owners of the affected vehicles of the defect, that notice does not advise all such owners to have their vehicles repaired, even if they are not today experiencing the fuel spit-back problem. The Court could order Defendant to provide such more fulsome notice.

While, as explained below, Plaintiffs have failed to state a claim for which these additional forms of relief (or any others) may be granted, that failing does not change the fact that

6

the Court could fashion materially more favorable relief for Plaintiffs than Chrysler Group has to date given Plaintiffs, meaning there is a dispute among the parties and the case is not moot. Accordingly, the Court has subject matter jurisdiction and will deny the portion of Defendant's motion that is predicated on Rule 12(b)(1).

## II. Failure to State a Claim

### A. Count I: Negligence

Chrysler Group argues that Plaintiffs have failed to state a claim for negligence. (D.I. 64 at 10-15) In particular, Defendant contends Count I of the Complaint should be dismissed because: (1) Plaintiffs do not plead any facts supporting damages; (2) Plaintiffs have not established causation; (3) and Plaintiffs have not pled any facts showing a breach of any duty. (*Id.* at 1) The Court agrees with Defendant.

With regard to damages, Chrysler Group argues that Plaintiffs' negligence claim should be dismissed because the only allegations of damages in the Complaint are barred by the economic loss doctrine. (*Id.* at 1) Plaintiffs appear to argue that the economic loss doctrine does not apply because Plaintiffs are seeking injunctive, rather than monetary, relief. (*See* D.I. 66 at 11-13)[4] As the Court has already held, however, "the economic loss doctrine applies here and the *de minimis* loss of the value of gas that is spilled, which is concededly *de minimis*, does not get around the application of that doctrine." (D.I. 60 at 71)

The question then becomes whether the Complaint contains any new allegations of

---

[4] Plaintiffs offer no authority for the proposition that the damages component of a negligence claim may be satisfied by seeking injunctive – rather than monetary – relief. *See generally Schaefer v. IndyMac Mortg. Servs.*, 2012 WL 4929094, at *3 n.5 (D.N.H. Oct. 16, 2012) (economic loss doctrine applies irrespective of type of remedy sought).

7

damages sufficient to support a claim for negligence. The Court finds that it does not.

For example, Plaintiffs allege that they have, and will continue to, "suffer the loss of fuel and/or be exposed to potential health and safety hazards" due to Chrysler Group's actions. (D.I. 62 ¶ 46) As previously noted, the allegations concerning the loss of fuel are *de minimis* and do not suffice given the application of the economic loss doctrine. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526 (D. Del. 2012); *see also Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1198 (Del. 1992). Plaintiffs' allegation of "potential health and safety hazards" is also inadequate, as it is conclusory, and the mere threat of future harm caused by owning a defective product does not necessarily give rise to a legally cognizable tort. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1087-88 (S.D. Ind. 2001) (no legally cognizable harm where plaintiffs' only damages were threat of vehicle accident caused by owning defective tire), *rev'd on other grounds sub nom. In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002).

Moreover, Plaintiffs have failed to allege (or thereafter in briefing or at oral argument articulate) any way in which Chrysler Group's offer of Extended Lifetime Warranties caused Plaintiffs to be worse off than they otherwise would have been, or what duty Chrysler Group (which neither manufactured nor sold the affected vehicles, nor assumed liability for defects created by the former Chrysler entities that are now defunct) owed Plaintiffs and has breached. *See Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 7 (Del. 2013) ("Generally, to determine whether one party owed another a duty of care, [Delaware] follows the guidance of the Restatement (Second) of Torts.").

Accordingly, Count I of Plaintiffs' Complaint fails to state a negligence claim on which

relief may be granted and, hence, will be dismissed.

B.     **Count II: Breach of Warranty**

Chrysler Group argues that Plaintiffs' breach of warranty claim in Count II of the Complaint should be dismissed. (D.I. 64 at 1) Under Delaware law, claims for breach of an express warranty are governed by the Uniform Commercial Code ("UCC"). *See Bell Sports, Inc. v. Yarusso*, 759 A.2d 582, 592 (Del. 2000) (express warranty provisions of Delaware law are identical to UCC provisions).

Chrysler Group contends that its Extended Lifetime Warranties are repair or replacement warranties, which offer owners of vehicles with the fuel spit-back problem a free repair of their vehicles, or reimbursement for repairs already done to fix this same problem. (D.I. 64 at 15-16) Plaintiffs appear to dispute this characterization, instead describing the warranty as being "that the product is free from this defect." (Tr. at 37; *see also* Tr. at 38 ("[I]f you made a promise to repair something ... [y]ou are doing it because you warrant that this is a part that shouldn't fail .... So they're warranting the part.")) But the Complaint and the attachments to it (which all parties agree the Court must consider) more accurately describe the warranty as follows: "[t]he defendant issued extended lifetime warranties *to provide for the repair and replacement of parts* necessitated by the fuel spit-back problem." (D.I. 62 ¶ 14 (emphasis added); *see also, e.g.*, D.I. 66-4 (warranty letter to Plaintiff Burton stating that warranty "has been extended to include lifetime coverage to repair a certain condition that may occur during refueling of the vehicle"))

Once the scope of the warranty is understood, it is clear that Plaintiffs have failed to state a claim for breach of that warranty. As Chrysler Group points out, the Complaint is devoid of allegations that any Plaintiff has sought the promised repair or replacement and not received it, or

9

has received it but been charged, or has sought reimbursement for an earlier repair or replacement and been denied. (D.I. 64 at 16) Given that the scope of Chrysler Group's duties are bound by the express warranty Chrysler Group provided, and there is no well-pleaded factual allegation that Chrysler Group failed to fulfill the Extended Lifetime Warranties it extended to Plaintiffs, the Complaint has failed to adequately allege a breach of those Warranties.

Plaintiffs contend that the Complaint sufficiently alleges insufficient notice, failure to warn consumers, failure to eliminate the safety hazards, and conducting silent recalls. (D.I. 66 at 17; D.I. 62 ¶¶ 11-13) Even accepting these allegations (though they to some extent state conclusory legal opinions and not facts), they do not permit the conclusion that the Extended Lifetime Warranties have "fail[ed] [their] essential purpose," as is needed on a breach of warranty claim. *Beal v. Gen. Motors Corp.*, 354 F. Supp. 423, 425-26 (D. Del. 1973). In the context of a warranty for the repair or replacement of defective parts, a warranty fails its essential purpose "where the warrantor refuses to repair the vehicle, the vehicle is not repaired within a reasonable time or the vehicle is not repaired in a reasonable number of attempts." *Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066, 1071 (Del. Super. 1989). Plaintiffs fail to allege any of these things. *See generally In re MyFord Touch Consumer Litig.*, 2014 WL 2451291 (N.D. Cal. May 30, 2014) (stating plaintiffs failed to plead breach of repair or replacement warranty where they did not afford defendant opportunity to repair or replace defective parts).

Count II, then, does not contain "factual content" sufficient to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, the Court will grant Defendant's motion to dismiss Plaintiff's breach of

warranty claim.[5]

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (D.I. 63) is **GRANTED**. The Clerk of the Court is directed to **CLOSE** this case.

August 27, 2014  
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

---

[5]Given the Court's conclusions regarding the sufficiency of Plaintiffs' allegations in Count I and II of the Complaint, the Court does not address whether Plaintiffs' claims are preempted under the Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.* This is an issue that goes to the appropriate remedy, an issue that is unripe since Plaintiffs have failed to state a claim on which any relief may be granted.

11